UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Murillo, individually and on behalf of all other similarly situation | Civil Action No. 6:18-cv-1434 |
| versus | Judge Michael J Juneau |
| Berry Bros General Contractors Inc | Magistrate Judge Carol B Whitehurst |

## ORDER ON CONDITIONAL CERTIFICATION

Before the Court is Plaintiff's Motion For Conditional Certification And Notice filed by Plaintiff, Sergio Murillo, individually and on behalf of all other similarly situated ("Plaintiff" or "Murillo") [Rec. Doc. 24], a Memorandum In Opposition [Rec. Doc. 26] filed by Defendant, Berry Brothers General Contractors, Inc. ("Berry Bros."), and Plaintiff's Reply thereto [Rec. Doc. 30]. For the following reasons, Plaintiff's Motion will be granted in part and denied in part.

### I.   BACKGROUND

Berry Bros. is a nationwide labor contractor based out of their central headquarters located in Berwick, Louisiana. It provides six main types of oilfield and maritime construction services: 1) fabrication services, 2) civil & mechanical installation and maintenance of industrial sites, 3) electrical and instrumentation services, 4) marine services, 5) pipeline installation, and 6) drydock services. Berry

Bros. has offices located in Berwick, Louisiana; Shreveport, Louisiana; Meeker, Colorado; and Pecos, Texas. It has projects in various states, including, but not limited to: Louisiana, Mississippi, South Carolina, North Carolina, West Virginia, Pennsylvania, North Dakota, Montana, Wyoming, Colorado, Kansas, Oklahoma, New Mexico and Texas.

Murillo filed this action under the Fair Labor Standards Act ("FLSA"), alleging that Berry Bros. failed to pay him and other similarly situated workers "overtime compensation." *Id. at ¶ 1*. Murillo alleges he was employed by Berry Bros. as a mechanic at its Pecos, Texas fabrication facility from approximately September 2017 to February 2018. *Id. at ¶¶ 22, 32*. He brings this suit on his own behalf and also on behalf of a proposed class which he moves to conditionally certify as:

> All non-exempt hourly workers, such as mechanics, equipment operators, drivers, pipefitters, welders, electricians, cement and concrete workers, and other laborers, employed by Berry Bros. in the United States over the last three years whose regular rate of pay failed to include Additional Pay beyond their base hourly rate (hereinafter "Non-Exempt Laborers" or "Class Members").

*R. 24*.

Murillo specifically alleges that Berry Bros. pays its workforce a base hourly rate and pays 1.5 times this hourly rate when employees work over 40 hours in a workweek. In addition to this base hourly rate, however, he contends that Berry

2

Bros. pays its workforce additional compensation included as wages for tax purposes ("Additional Pay"). This "Additional Pay" is not included in workers' overtime rates of pay. As a result Murillo contends that Berry Bros. violated the FLSA because it did not factor into this additional compensation overtime rates of pay, resulting in an underpayment of overtime pay. Murillo seeks to expand the definition of the conditionally-certified class to include all "non-exempt laborers" irrespective of job duties because Berry Bros.' practice involves a uniform pay plan for those workers.

Murillo moves to conditionally certify a collective action under 29 U.S.C. § 216(b) of the FLSA and judicially-approve notice to be sent by first class mail, e-mail and text message[1] to all Berry Bros. employees classified as Non-Exempt Laborers or Class Members at any time during the past three years. In addition, Murillo requests Spanish translations of the Notice documents, prepared by Plaintiff and approved by the Court. If granted conditional certification under 29 U.S.C. § 216(b), Plaintiff requests that Berry Bros. be required to produce the names of all Class Members, along with their last known home addresses, e-mail addresses and

---

1 Murillo requests text messaging because "the Class Members are laborers who work very long hours and are away from their home addresses for long periods of time". *R. 24*.

telephone numbers, and dates of employment. Plaintiff further requests a Ninety (90) day Notice period for Class Members to joint this case.

Berry Bros. denies Plaintiff's allegations and opposes collective action certification under 29 U.S.C. § 216(b). It also objects to Plaintiff's proposed definition of the class, the form and content of the proposed notice, and aspects of Plaintiff's request for information.

### III. LAW AND ANALYSIS

#### A. *Legal Standard*

The Fair Labor Standards Act ("FLSA") sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) provides: An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. *Id*.

4

The FLSA affords workers the right to sue collectively on behalf of themselves and others "similarly situated" for violations of the Act's minimum wage provisions and overtime protections. 29 U.S.C. § 216(b). An employee can bring an action for violating the overtime provisions of the FLSA either individually or as a collective action on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). When brought as a collective action, the plaintiff may seek "conditional class certification" from the court, which permits the plaintiff to "send[ ][a] court-approved written notice to employees, who in turn become parties to [the] collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 75 (2013).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class, the majority of courts within this circuit have adopted the two-stage approach articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987). *See, e.g, Trisler v. LifeShare Blood Centers*, 2019 WL 3451708, at *2 (W.D.La., 2019) (following *Lusardi*); *Ruiz v. Masse Contracting, Inc.*, 2019 WL 2451628, at *7 (E.D.La., 2019); *Mateos v. Select Energy Servs., LLC*, 997 F.Supp.2d 640, 643 (W.D.Tex.2013) (same); *Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 435 (E.D. La. 2010) (same).

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir.1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir.2010). If the court finds that the putative class members are similarly situated, then conditional certification is warranted and the plaintiff will be given the opportunity to send notice to potential class members. *Id*. After the class members have opted in and discovery is complete, the defendant may then file a decertification motion-the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214. At that point the Court will fully evaluate the merits of the class certification.

### B. Conditional Certification

As this case is presently at the "notice stage," the Court must make a decision whether conditional certification should be granted and whether notice of the action and right to opt-in should be given to potential class members.

Murillo alleges he was paid a base hourly rate of $21.00 per hour and generally worked over 40 hours per week for which he was paid overtime. In

6

addition to the base hourly rate and related overtime, he also received "Additional Pay" on his paycheck stubs. As an example of this Additional Pay, Murillo attaches pay stubs for the pay period 9/4/2017 to 9/10/2017 providing "Pay Code 5000" for $240.00 and "Pay Code 4600" for $600.00 which were included in his total gross amount. Murillo contends that he "understood that these Additional Payments were based on his hours worked – namely, that in the event he worked at least 4 hours per day, he would receive this Additional Pay" which was subject to taxes. *R. 24 at p. 3*. Murillo contends that he "learned that other employees received the ["additional pay"] that was not factored into their overtime pay, and was also subject to taxes. He identifies the "other employees" as "Jorge Marinez, Jorge Marinez Jr., Ricardo Soto, and Armando (l/n/u)." *Id. at p. 4*.

Berry Bros. argues that Murillo "refused to specify the nature of the 'Additional Pay' he received from Berry Bros." It argues that Murillo has failed to cite any case in which the Court conditionally certified a class based on the employer's exclusion of unspecified "'Additional Pay' from the regular rate." Berry Bros. states that Murillo's discovery responses demonstrate that his unspecified "Additional Pay" claims are actually based on (1) per diem payments and (2) vehicle reimbursement. In a sworn declaration, Berry Bros.'s HSE/Risk Management Coordinator, Jeff Daigle, specifically states that

7

> Murillo was paid a daily per diem, which was intended to reimburse him for lodging, meals and other living expenses while he worked in Pecos. [His] per diem pay is reflected on his pay stubs under the pay code 4600. Murillo also received "truck pay," which was intended to reimburse him for the use of his personal equipment or vehicle in the performance of his duties for Berry Bros. [His] truck pay is reflected on his pay stubs under the pay code 5000.... Not every non-exempt hourly employee who works in a manual labor position for Berry Bros. receives truck pay and per diem pay. Many of these employees receive neither.

*R. 26-1.* Berry Bros. contends that per diem payments may be excludable from the regular rate of pay under the FLSA. *See Berry v. Excel Group, Inc.*, 288 F.3d 252, 254 (5th Cir. 2002) ("each employee's expenses [must] be examined on a case-by-case basis to see whether the 'per diem' is appropriate and reasonable.").

Murillo agrees that Berry Bros.' characterization of "Additional Pay" as taxable "per diem" and "truck pay" is "exactly what type of Additional Pay is at issue." *R. 29-2, p. 2.* He claims that Berry Bros. categorically excludes all Additional Pay (per diem and truck pay) other than hourly and quantity of work pay, from the regular rate of pay to calculate employees' overtime compensation. As to Berry Bros.' merit-based argument that per diem payments may be excluded from the regular rate of pay under § 207(e)(2), Murillo correctly states that the conditional certification stage is not the proper time for such arguments as affirmative defenses are more properly adjudicated after discovery. It is Berry Bros.' burden to show that the payments at issue made to employees should be

8

excluded from the employees' regular rate under 29 U.S.C. § 207. *See Atkins v. Primoris Service Corp.*, 2017 WL 4697517, at *2 (W.D.La., 2017)*; Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir.2000); *Herman v. Anderson Floor Co.*, 11 F.Supp.2d 1038, 1042 (E.D.Wis.1998).

Berry Bros. also argues that Murillo cannot show that his proposed nationwide class of "all non-exempt hourly laborers" are similarly situated as he has offered no evidence that the potential class member were victims of the alleged "Additional Pay" practice. Further, Berry Bros. argues that the Court should not conditionally certify this action because Murillo has failed to provide the Court with declaration from any from other potential plaintiffs or other competent evidence showing the "Additional Pay" practice applies to all Berry Bros. non-exempt hourly laborers nationwide.

Murillo identifies four non-exempt hourly employees in his motion who have also received "Additional Pay." Moreover, Daigle states in his declaration that "not every non-exempt hourly employee who works in a manual labor position" received per diem and truck pay— effectively conceding that some of these employees did receive such payments. Notwithstanding the above, to the extent that Berry Bros. objects that Murillo has not sufficiently shown that others are interested in joining the case, the Court notes that "in the Fifth Circuit, there is no categorical rule that

9

Plaintiffs must submit evidence at this time that other [individuals] seek to opt-in to this case." *White v. Integrated Electronic Technologies, Inc.*, 2013 WL 2903070, at *7 (E.D.La.,2013) *citing Villarreal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d 902, 916 (S.D.Tex.2010); *see also Wellman v. Grand Isle Shipyard, Inc.*, 2014 WL 5810529, at *4 (E.D.La.,2014).

In *Minyard v. Double D Tong, Inc.*, 2017 WL 5640818, at *2 (W.D. Tex. Mar. 22, 2017) the plaintiffs filed an FLSA case with opt-in plaintiffs which included "all non-exempt casing employees" employed by defendants nationwide. Defendants argued that because their casing employees had dissimilar job positions with additional pay, including non-discretionary bonuses, truck allowances, and safety bonus pay, they were not similarly situated under the FLSA. As Murillo asserts in this case, the plaintiffs in *Minyard* argued that the "similarly situated" analysis did not depend on the various job duties performed by the members of the proposed class because the case was not a misclassification case, but rather, a uniform pay plan for non-exempt employees. The court agreed and held that a class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations of the case. *Id. at *2* (the purported dissimilarities between members of Plaintiffs' proposed class are irrelevant because a common scheme or policy allegedly affects

all non-exempt casing employees), *citing Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 522 (N.D. Tex. 2014).

While the Court acknowledges that Berry Bros. laborers have dissimilar job positions, these dissimilarities are not legally relevant because the alleged FLSA violations in this case do not turn on the nature of the work performed. *See Tamez v. BHP Billiton Petroleum*, 2015 WL 7075971, at *3–4 (W.D. Tex. Oct. 5, 2015). Courts generally require that members of an FLSA class have similar job titles and responsibilities. *See Pacheco v. Aldeeb*, 2015 WL 1509570, at *7 (W.D. Tex. Mar. 31, 2015)). In the present case, however, the proposed class includes only non-exempt employees. Thus, the alleged FLSA violations do not depend on the job title or responsibilities of each plaintiff. If Plaintiff prevails on his claims, then Berry Bros. violated the FLSA with regard to every non-exempt employee given "Additional Pay" without overtime at the legally-required rate regardless of each plaintiff's particular job position. Because Murillo alleges that the compensation scheme is in of itself a violation of the FLSA, no further factual inquiry into the job duties of each plaintiff is necessary. As such, liability can be determined collectively without limiting the class to a specific job position.

Here, the claims of the putative class members are similar in that they are compensated under the same regimen. *Aguilar v. Complete Landsculpture, Inc.*,

2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) ("The claims of the putative class members are similar in that ... they were compensated under the same regimen. Thus, under plaintiffs' theory of the case, the fact that [they] had somewhat different duties and rates of pay is immaterial."). As the dissimilar job responsibilities among the class have not been shown to be relevant to Plaintiff's FLSA allegations, they are not a barrier to conditional certification. However, because Plaintiff concedes that the "Additional Pay" provision are actually "per diem and truck payments," the Court will clarify the definition of "Additional Pay" and amend the definition of the conditionally-certified class as follows:

> **All current and former non-exempt laborers employed by Berry Bros.** *over the last three years* **who received Additional Pay in the form of per diem payments and truck allowance pay, not included in the regular rate of pay.**

*C. Form of Notice*

Having concluded that a notice of collective action is appropriate in this case, the next consideration is whether Plaintiff's proposed notice is proper. Murillo seeks judicial approval of his Proposed Notice as well as "the disclosure of the names, contact information (including the addresses, email addresses, telephone numbers) and dates of employment of the Class Members." *R. 24, p. 12.* He also requests permission to send Spanish translations of the Notice documents because "many

12

Berry Bros. employees, like Plaintiff, consider Spanish as their primary language." *Id.*

Berry Bros. raises a number of objections to Plaintiff's proposed notice including: (1) potential opt-in plaintiffs should not send their notice forms directly to Plaintiff's counsel; (2) the class period should be limited to three years prior to the date notice is issued;[2] (3) failure to inform of the potential obligation to pay proportional taxable court costs if the judgment is unfavorable to them; (4) stating the Court has "allowed" or "certified" the collective action. Defendant requests that the Court require the parties to meet and convene to submit a joint proposed notice. Plaintiff does not oppose this request, but asks that the Court resolve Berry Bros. objections to the proposed notice. Plaintiff opposes only objections one through three. The Court will consider the opposed objections below. As to the unopposed objection, the parties are to omit the objected to language from the joint notice.

(1) Regarding Defendant's objection that the opt-in form be sent to Plaintiff's counsel, Plaintiff argues that submitting the form to Plaintiff's counsel and Plaintiff's counsel filing the form with the Court "is the most practicable under the circumstances [and] will conserve judicial resources." Plaintiff states that this Court has allowed such action in the past. The Court agrees with Plaintiff's reasoning.

---

2 The Court is confused by Defendant's objection to use of the term "service technicians." *R. 26, p. 17*. The Court is unable to locate any such term in Plaintiff's proposed notice.

Depending on the number of opt-in forms submitted by potential plaintiffs, the Court's limited resources will be conserved by Plaintiff's counsel receiving the consent forms and then, if appropriate, filing them with the Court. Not only has this Court issued such an order in a number of collective cases, other courts also rely on this method. *See e.g., Kidwell v. Ruby IV, LLC*, 2019 WL 219850, at *8 (E.D.La., 2019); *Gutierrez v. Drill Cuttings Disposal Company, L.L.C.*, 2018 WL 2128440, at *2 (W.D.Tex., 2018); *Mahrous v. LKM Enterprises, LLC*, 2017 WL 2730886, at *5 (E.D.La., 2017).

(2) As to the second objection, courts in this District have ordered that FLSA collective action notices include all persons employed up to three years before the date of the complaint. *See Mahrous v. LKM Enterprises, LLC*, 2017 WL 2730886, at *3 (E.D.La., 2017); *Busby v. Dauterive Contractors, Inc.*, 2016 WL 430608, at *7 (W.D.La., 2016); *Case v. Danos & Curole Marine Contractors, LLC*, 2015 WL 1978653, at *7 (E.D. La. 2015); *White v. Integrated Electronic Technologies, Inc.*, 2013 WL 2903070, at *10 (E.D.La.,2013); *Mejia v. Brothers Petroleum, LLC*, 2014 WL 3530362 (E.D. La. 2012). *But see Wellman v. Grand Isle Shipyard, Inc.*, 2014 WL 5810529 at *5 (E.D. La. 2014) (declining to use date of complaint to determine notice period where claims would be barred by statute of limitations). Thus, the Court defines the class period as beginning on November 2, 2015, three years before

the filing of the complaint. Defendants will have the opportunity at the appropriate time to challenge the timeliness of any claims brought by putative plaintiffs who wish to opt-in to the litigation.

(3) While courts are divided on objection three—whether notice about potential costs to the plaintiffs must be included—courts in this district have denied its inclusion. *See, e.g.*, *Reyes v. Quality Logging, Inc.*, 52 F. Supp.3d 849, 853-54 (S.D. Tex. 2014) ("the general authority on this question is decidedly split"). In *Quality Logging* the court found that such language is "unnecessary and potentially confusing." *Id. citing Sexton v. Franklin First Fin., Ltd.,* 2009 WL 1706535, at *12 (E.D.N.Y. 2009) and *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *8 (E.D.N.Y. 2007). Given the involvement of likely unsophisticated opt-in plaintiffs in this case, the undersigned follows the approach of cases like *Quality Logging* in recognizing that the disproportionate "in terrorem effect" of providing such notice could "outweigh[ ] the likelihood" such costs will significantly impact the instant case. *Id*. Thus, the joint notice does not need to contain references to counterclaims or court costs, but it is the responsibility of class counsel to render class members appropriate advice on such matters.

### D. Production of Contact Information

Plaintiff seeks Court approval to: (1) provide notice by U.S. Mail, text message and e-mail; (2) provide a reminder notice by U.S. Mail, text message and e-mail; and (3) post the notice at Berry Bros.' jobsite in an "open and obvious location." Berry Bros. argues that telephone numbers should only be allowed in the event first class mail is returned as undeliverable with no forwarding address. Multiple courts in this District have ordered the production of telephone numbers in similar cases. *See Defrese-Reese v. Healthy Minds, Inc.*, 2019 WL 97042, at *1 (W.D.La., 2019); *Mahrous v. LKM Enterprises, LLC*, 2017 WL 2730886, at *4 (E.D.La., 2017) (collecting cases). The Court will allow Plaintiff to provide notice by all requested methods, U.S. Mail, email and text message.

While the Court finds the Plaintiff has failed to establish that reminder notices are necessary, the Court concludes that the posting of Notices at Berry Bros.' jobsite trailers is an efficient, cost effective method to notify potential opt-in distributors of this class action and would not be burdensome on Defendant. *See Roberts v. S. B. Southern Welding, LLC*, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) (sustaining objection to allowing reminder notices because they would be unnecessary and potentially be interpreted as encouragement by the court to opt into the lawsuit); *Coyle*, 2016 WL 4529872, at *7 ("Posting Notices at the warehouses

is a cost-efficient way to notify potential opt-in plaintiffs of the action and places no burden on Defendants").

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion For Conditional Certification And Notice filed by Plaintiffs, Sergio Murillo, individually and on behalf of all others similarly situation [Rec. Doc. 24], is GRANTED. The Court conditionally certifies this matter as a collective action including all current and former non-exempt laborers employed by Berry Bros. during the time period of November 2, 2015 to the present who received Additional Pay in the form of per diem payments and truck allowance pay not included in the regular rate of pay.

**IT IS FURTHER ORDERED** that within ten (10) days of this Order the parties shall file with the Court a Joint Proposed Notice that complies with this Order. In the event the parties cannot agree as to any specific issue they must identify and brief the issue(s) separately at which time the Court will make a determination.

**IT IS FURTHER ORDERED** that Defendant shall within twenty-one (21) days of this Order, provide Plaintiffs' counsel with the names, last known addresses,

e-mail addresses, and telephone numbers of the potential opt-in plaintiffs ("Court-Ordered Information"), in a usable electronic format.

**IT IS FURTHER ORDERED** that Plaintiff's counsel shall, upon obtaining the Court-Ordered Information, be permitted to send notices of this action in the form set forth in the approved Joint Proposed Notice, by mail, email and text message for a period of ninety (90) days from the date Defendant provides Plaintiff with the Court-Ordered Information.

**IT IS FURTHER ORDERED** that the notice shall inform all potential opt-in plaintiffs that they shall have until ninety (90) days from the date Defendant provides Plaintiffs with the Court-Ordered Information to deposit in the mail, email or text their Notices of Consent to Join to counsel for Plaintiffs.

**THUS DONE AND SIGNED** in Lafayette, Louisiana, this 23rd day of September, 2019.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**